**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

MILAGROS S. KEH,                                     :

              Plaintiff,                              :        1:03-cv-68-2(WLS)

vs.                                                   :

AMERICUS-SUMTER COUNTY HOSPITAL                       :
AUTHORITY d/b/a SUMTER REGIONAL                       :
HOSPITAL, INC., d/b/a SUMTER REGIONAL                 :
HOSPITAL; SOUTHWEST GEORGIA                           :
HEALTHCARE ASSOCIATION, INC.;                         :
SOUTHWEST GEORGIA HEALTHCARE                          :
RESOURCES, INC.; JERRY ADAMS,                         :
Individually and in his Official capacity as CEO      :
OF SUMTER REGIONAL HOSPITAL, INC.;                    :
SOUTHWEST GA. HEALTHCARE                              :
RESOURCES, INC., ANDREW C. CARLSON,                   :
M.D., Individually and in his Official capacity as    :
CEO, MEDICAL DIRECTOR, and CHAIRMAN                   :
OF THE BOARD OF DIRECTORS OF                          :
SOUTHWEST GEORGIA HEALTHCARE                          :
ASSOCIATION, INC.; AMERICUS PEDIATRICS,               :
P.C.; JOSEPH W. KING, III, M.D., Individually         :
and in his Official capacity as CHAIRMAN OF           :
THE CREDENTIALING COMMITTEE OF                        :
SOUTHWEST GEORGIA HEALTHCARE                          :
ASSOCIATION, INC.; JOSEPH W. KING, III,               :
M.D., P.C.; A. GATEWOOD DUDLEY, M.D.,                 :
Individually and in his Official capacity as a        :
Member of the SUMTER REGIONAL                         :
HOSPITAL MEDICAL EXECUTIVE                            :
COMMITTEE; GYNECOLOGY ASSOCIATES,                     :
P.C.; GREGORY A. GARTH, M.D., Individually            :
and in his Official capacity as a Member of the       :
SUMTER REGIONAL HOSPITAL MEDICAL                      :
EXECUTIVE COMMITTEE; KENNETH E.                       :
DINELLA, M.D., Individually and in his Official       :        LIST OF NAMED
capacity as a Member of the SUMTER                    :        NAMED DEFENDANTS
REGIONAL HOSPITAL MEDICAL                             :        CONTINUED ON
EXECUTIVE COMMITTEE; MICHAEL S.                       :        NEXT PAGE
BUSMAN, M.D., Individually and in his Official        :
capacity as a Member of the SUMTER REGIONAL           :
HOSPITAL MEDICAL EXECUTIVE                            :
COMMITTEE; CHANH M. TU, Individually and              :

1

```
in his Official capacity as a Member of the                    :
SUMTER REGIONAL HOSPITAL MEDICAL                               :
EXECUTIVE COMMITTEE; GWENDOLYN V.                              :
MORGAN, M.D., Individually and in his Official                 :
capacity as a Member of the SUMTER                             :
REGIONAL HOSPITAL MEDICAL EXECUTIVE                            :
COMMITTEE; MICHAEL CACCIATORE,                                 :
M.D., Individually and in his Official capacity as a           :
Member of the SUMTER REGIONAL HOSPITAL                         :
MEDICAL EXECUTIVE COMMITTEE;                                   :
MEDICAL IMAGING CONSULTANTS, P.C.;                             :
CHARLES R. SHEFFIELD, M.D., Individually                       :
and in his Official capacity as a Member of the                :
SUMTER REGIONAL HOSPITAL MEDICAL                               :
EXECUTIVE COMMITTEE; SUMTER                                    :
MEDICAL SERVICES, P.C.; SANDRA                                 :
ZORNES, M.D., Individually and in his Official                 :
capacity as a Member of the SUMTER REGIONAL                    :
HOSPITAL MEDICAL EXECUTIVE                                     :
COMMITTEE; and SOUTHERN PATHOLOGY                              :
& LABORATORY SERVICES, P.C.,                                   :
                                                               :
                          Defendants.                          :
```

## ORDER

Presently pending before the Court are the following: Plaintiff's Motion to Amend and/or

Modify Discovery and Scheduling Order (Doc. No. 55); Defendants' Joint Motion to Dismiss

Plaintiff's Claims for Libel, Slander and Malicious Use of Privilege (Doc. No. 56); Defendants'

Joint Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted (Doc. No.

58)[1]; Plaintiff's Motion for Leave to Exceed the Number of Interrogatories, Requests for

Production of Documents and Requests for Admissions to the Party Defendants (Doc. No. 83);

Plaintiff's Motions to Compel Defendants to Answer Interrogatories (Doc. Nos. 91, 92, 94, 95, 96,

---

[1]     On May 27, 2003, Plaintiff filed a notice voluntarily dismissing Medical
        Imaging Consultants, P.C. without prejudice from this action. (Doc. No. 2).

2

97, 98); Defendants' Motion for Protective Order (Doc. No. 99)[2]; and Plaintiff's Motions to

Compel Defendants' Production of Documents and Things (Doc. Nos. 101, 102).

## I.    DISCUSSION

### A.    Plaintiff's Motion to Amend and/or Modify Discovery and Scheduling Order

Plaintiff seeks to amend the discovery completion deadline and to extend the expert

disclosures deadline. (Doc. No. 55). Subsequent to Plaintiff's motion to extend the said deadlines,

the Court received a motion from all Defendants requesting discovery to be stayed in the interests

of judicial economy, except to the possible threshold issue of Qualified Immunity which may or

may not find some or all of the Defendants immune from liability under the alleged civil rights

allegations. (Doc. No. 109). The Court granted the motion and suspended discovery. (Doc. No.

110). In addition, the Court stated that after the Court rules on pending discovery matters the Court

would then consider the appropriate direction and parameters of discovery. As a practical matter,

the Court's order suspending discovery (Doc. No. 110) makes Plaintiff's motion (Doc. No. 55)

premature at this time. Therefore, Plaintiff's Motion to Amend and/or Modify Discovery and

Scheduling Order (Doc. No. 55) is **DENIED as premature without prejudice.**

### B.    Defendants' Joint Motion to Dismiss Plaintiff's Claims for Libel, Slander and Malicious Use of Privilege

Defendants move the Court to dismiss Plaintiff's claims for libel, slander and malicious

use of privilege because said claims are barred by the statute of limitations. (Doc. No. 56).

O.C.G.A. § 9-3-33 states, in pertinent part, "[a]ll actions for injuries to the person shall be brought

within two years after the right of action accrues, except for injuries to the reputation, which shall

---

[2]     Defendants filed an addendum to their motion for a protective order on August 23, 2004 to include the affidavit of Dr. Andrew Carlson, referred to as Exhibit 7 in Defendants' Motion for a Protective Order, which was inadvertently excluded from the initial filing. (Doc. No. 106).

3

be brought within *one year* after the right of action accrues." (emphasis added). Plaintiff's

complaint was filed on April 24, 2003. (Doc. No. 1). On July 28, 2003, Plaintiff's complaint was

amended of right. (Doc. No. 32). Therefore, Plaintiff could only seek damages on her alleged

claims for injuries to her reputation which occurred not later than one year prior to the filing of her

complaint, i.e., from April 24, 2002 through April 24, 2003. However, Plaintiff's Complaint and

Amended Complaint do not allege any statement or action of any Defendant subsequent to April

11, 2002. (Doc. Nos. 1, 32). Consequently, Count VI for Slander pursuant to O.C.G.A. § 51-5-4,

Count VII for Libel pursuant to O.C.G.A. § 51-5-1 and Count VIII for Malicious Use of Privilege

pursuant to O.C.G.A. § 51-5-9 are all subject to and barred by the limitations period of O.C.G.A. §

9-3-33. Therefore, Defendants' Joint Motion to Dismiss Plaintiff's Claims for Libel, Slander and

Malicious Use of Privilege (Doc. No. 56) is **GRANTED and Counts VI, VII and VIII are**

**dismissed as time barred under the applicable one-year Georgia statute of limitations.**

### C.     Defendants' Joint Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted[3]

#### 1.     *42 U.S.C. § 1983*

Plaintiff alleges Defendants Southwest Georgia Healthcare Resources, Inc., Americus

Pediatrics, P.C., Joseph W. King, III, M.D., P.C., Gynecology Associates, P.C., Sumter E.N.T.,

P.C., Michael Cacciatore, M.D., P.C., Sumter Medical Services, P.C., and Southern Pathology &

Laboratory Services, P.C., (collectively, "Corporate Defendants"), violated 42 U.S.C. § 1983. (See

Doc. No. 1, p. 32, ¶¶ 100-103). Plaintiff also states that Defendants A. Gatewood Dudley, Gregory

A. Garth, Kenneth E. Dinella, Michael S. Busman, Chanh M. Tu, Gwendolyn V. Morgan, Michael

Cacciatore, Charles M. Davis, Charles R. Sheffield and Sandra Zornes, (collectively, "Committee

---

[3]     Plaintiff did not file a response to Defendants' Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted.

Member Defendants"), violated 42 U.S.C. § 1983 on the basis of conduct as members of the Sumter Regional Hospital Medical Executive Committee in their individual capacities. (*See* Doc. No. 1, p. 32, ¶¶ 100-103).

Specifically, Count IX of Plaintiff's Complaint alleges, in pertinent part: "The defendants are liable individually, jointly and severally pursuant to 42 U.S.C. § 1983 for violating and conspiring to violate Plaintiff's rights guaranteed by the United States Constitution, to include the First Amendment and the Fourteenth Amendment of the United States Constitution." (Doc. No. 1, ¶ 101). Corporate Defendants and Committee Member Defendants move the Court to dismiss Plaintiff's 42 U.S.C. § 1983 claims against them for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6) because they are not state actors. (Doc. No. 59). Plaintiff has not filed a response to the motion.

In order to state a claim under Section 1983, Plaintiff must show state action by showing that "the conduct allegedly causing the deprivation of a federal right [is] *fairly attributable* to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (emphasis added). To show that conduct is "fairly attributable" to the state, Plaintiff must prove that: 1) the violation of a right secured by the Constitution and laws of the United States; and 2) the alleged deprivation was committed *under color of state law*. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (emphasis added). The under-color-of-state-law element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful,'" Blum v. Yaretsky, 457 U.S. 991, 1002 (1982) (*quoting* Shelley v. Kraemer, 334 U.S. 1, 13 (1948)). *See also* Nat'l Broad. Co. v. Comm. Workers of Am., 860 F.2d 1022, 1024 (11th Cir. 1988)("The Fourteenth Amendment, and, through it, the First and Fifth Amendments, do not apply to private parties unless those parties are engaged in activity deemed to be 'state action'"). *See also* Patrick v. Floyd Medical Center, 201 F.3d 1313 (11th Cir. 2000)( where the denial of staff privileges at a public hospital by a private,

5

Georgia healthcare management company did not constitute state action under Section 1983 action).

Plaintiff has not filed a response to the FED. R. CIV. P. 12(b)(6) motion by Corporate Defendants and Committee Member Defendants and, with little concrete factual information in her Complaint and Amended Complaint, Plaintiff has not sufficiently and adequately asserted that Corporate Defendants and Committee Member Defendants in their individual capacities violated and conspired to violate Plaintiff's constitutional rights. Since Plaintiff has not filed a responsive pleading asserting that Corporate Defendants along with Committee Member Defendants in their individual capacities are state actors, Plaintiff's Section 1983 claim against them must be dismissed. Therefore, Defendants' Joint Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted (Doc. No. 59) is **GRANTED as to Count IX of Plaintiff's Complaint against Corporate Defendant and Committee Member Defendants in their individual.**

## 2. *42 U.S.C. § 1985(2)*

Plaintiff alleges the Corporate Defendants violated 42 U.S.C. § 1985(2). (*See* Doc. No. 1, p. 29, ¶¶ 88-89). Plaintiff also states that Committee Member Defendants violated 42 U.S.C. § 1985(2) on the basis of conduct as members of the Sumter Regional Hospital Medical Executive Committee in their individual capacities. (*See* Doc. No. 1, p. 29, ¶¶ 88-89).

Specifically, Count III of Plaintiff's Complaint alleges, in pertinent part: "The defendants are liable individually, jointly and severally pursuant to 42 U.S.C. § 1985(2) for conspiracy with the intent and purpose of deterring, forcing, or intimidating and/or punishing the Plaintiff for providing evidence of discriminatory conduct by, for and/or on behalf of Sumter Regional Hospital's agents, employees and/or officials in the case of" Marshall v. Americus-Sumter County Hospital Authority, No. 1:01-CV-79-3. (Doc. No. 1, ¶ 89). Corporate Defendants and Committee

6

Member Defendants move the Court to dismiss Plaintiff's 42 U.S.C. § 1985(2) claims against them

for failure to allege any facts that allege they conspired with the intent and purpose of deterring,

forcing or intimidating and/or punishing Plaintiff pursuant to FED. R. CIV. P. 12(b)(6). (Doc. No.

59). Plaintiff has not filed a response to the motion.

The first four clauses of 42 U.S.C. § 1985(2) "describe conspiracies that are designed to

obstruct the course of justice in the federal judicial system." Carter v. Church, 791 F.Supp. 298,

300 (M.D.Ga. 1992) (*quoting* Bradt v. Smith, 634 F.2d 796, 800-01 (5TH Cir. 1981)). Two of the

first four clauses of section 1985(2) provide as follows:

> "If two or more persons in any state or territory conspire [ (A) ] to deter by force,
> intimidation, or threat, any party or witness in any court of the United States
> from attending such court, or from testifying to any matter pending therein,
> freely, fully, and truthfully, or [ (B) ] to injure such party or witness in his person
> or property on account of his having so attended or testified, ...."

42 U.S.C. § 1985(2)(parentheticals not in original). The instant action involves the second clause,

a Section 1985(2) "retaliation" claim, which has been generally referred to as "clause B." *See*

Carter v. Church, 791 F.Supp. at 300. To assert a claim for retaliation under clause B of section

1985(2), a plaintiff must prove (1) a conspiracy, (2) retaliation spawned by the attendance or

testimony in federal court, (3) an act in furtherance of the conspiracy, and (4) injury to the plaintiff.

Foster v. Pall Aeropower Corp., 111 F.Supp.2d 1320, 1322 (M.D. Fla. 2000).

Plaintiff's Complaint and Amended Complaint state that Corporate Defendants as well as

Committee Member Defendants in their individual capacities conspired to summarily suspend her

medical staff privileges to admit patients on November 28, 2001 in violation of a *motion* of

protective order[4] filed by John Marshall on November 12, 2001 in the Marshall case. (Doc. No. 1,

---

[4]     *See* Marshall v. Americus-Sumter County Hospital Authority, No. 1:01-CV-79-
3, (Doc. No. 39, "Plaintiff's Motion for Protective Order"). Obviously,
Defendants could not violate a motion not granted by the Court. A violation
would require the issuance of an order.

¶¶ 81-83, 88, 89). Plaintiff pleads that said privileges were suspended by these alleged conspirators because *she provided evidence* of discriminatory conduct "by, for and/or on behalf of Sumter Regional Hospital's agents, employees and/or officials" in the Marshall case and because she maintained a close personal relationship with Dr. John Marshall. (Doc. No. 1, ¶¶ 83, 89). Plaintiff further alleges "[t]he motion for protective order . . . was filed to protect persons coming forward to provide truthful information related to Dr. Marshall's claims . . . Plaintiff is one of the persons to whom the motion for protective order was filed in order to protect." *Id.* at ¶ 83.

The Court notes that one of Plaintiff Keh's counsel was counsel for Plaintiff John Marshall and filed the motion for protective order in the aforementioned Marshall case. Plaintiff's counsel, however, fails to mention that the motion for protective order referenced was denied by this Court. Marshall v. Americus-Sumter County Hospital Authority, No. 1:01-CV-79-3, (Doc. No. 112). In the order denying the motion, the Court said "Plaintiff has failed to assert any particular and specific facts as to any alleged harassment by Defendants against a potential witness. The Court also notes that Plaintiff, not the alleged witnesses on their own behalf, seeks this protection." *Id.* at 5. Plaintiff's counsel also fails to mention that a motion for reconsideration of the Court's order denying the motion for protective order was denied as well. Marshall v. Americus-Sumter County Hospital Authority, 2002 U.S. Dist. LEXIS 26821, *3-*4 (M. D. Ga. November 22, 2002). In the Court's order denying the motion for reconsideration, the Court made clear that Plaintiff John Marshall's motion for protective order was denied because:

> "Plaintiff had failed to make a clear showing that such an order is necessary. The Court also ordered Plaintiff to answer discovery requests from Defendants seeking information about witnesses who have alleged discriminatory treatment or who have witnessed discriminatory treatment. Plaintiff then filed the instant motion which contained an affidavit from a witness who alleged that he was being retaliated against because he came forward in support of Plaintiff. Defendants responded by filing a copy of the deposition of the same witness taken in a related discrimination case involving some of the same Defendants . . . . The Court also notes that Plaintiff has not provided it any legal authority for

8

> fashioning such a protective order as requested. Lastly, the Court is concerned
> that the motion is made not by the aggrieved witness but by the Plaintiff."

*Id.*

Plaintiff has not filed a response to the FED. R. CIV. P. 12(b)(6) motion by Corporate

Defendants and Committee Member Defendants and, with little concrete factual information in her

Complaint and Amended Complaint, Plaintiff has failed to allege adequate facts showing that

Corporate Defendants as well as Committee Defendants in their individual capacities conspired to

retaliate against her for her "attendance or testimony" in federal court. Congress meant 42 U.S.C.

§ 1985(2) to protect a party based on his or her *physical* presence while attending or testifying in

court and not merely providing evidence of alleged discriminatory conduct. Kimble v. D. J.

McDuffy, Inc., 648 F.2d 340, 348 (5th Cir. 1981).[5] In this case, Plaintiff makes conclusory

allegations, but nowhere does Plaintiff allege that she was actually injured because she *physically*

testified in federal court in the Marshall case as proscribed under 42 U.S.C. § 1985(2). *Id.*[6]

Therefore, Defendants' Joint Motion to Dismiss for Failure to State a Claim upon Which Relief

Can Be Granted (Doc. No. 59) is **GRANTED as to Count III of Plaintiff's Complaint against**

**Corporate Defendants and Committee Member Defendants in their individual capacities.**

### *3. 42 U.S.C. § 1985(3)*

Plaintiff alleges Corporate Defendants violated 42 U.S.C. § 1985(3). (*See* Doc. No. 1, p.

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[6] The Court notes that Plaintiff filed a motion to intervene which was denied in the Marshall case. Marshall v. Americus-Sumter County Hospital Authority, No. 1:01-CV-79-3, (Doc. Nos. 86, 113). However, again, filing a motion is not the equivalent to *physically* attending or testifying for the purposes of Section 1985(2). Kimble v. D. J. McDuffy, Inc., 648 F.2d at 348. Further the Court is unaware how a motion can be violated by conspiracy or otherwise.

32-33, ¶¶ 104-105). Plaintiff also states that Committee Member Defendants violated 42 U.S.C. § 1985(3) on the basis of conduct as members of the Sumter Regional Hospital Medical Executive Committee in their individual capacities. (*See* Doc. No. 1, p. 32-33, ¶¶ 104-105).

Specifically, Count X of Plaintiff's Complaint alleges, in pertinent part: "The defendants are liable individually, jointly and severally pursuant to 42 U.S.C. § 1985(3) for conspiracy with the intent and purpose of depriving persons of Filipino national origin, either directly or indirectly, of the equal protection of the laws, or of equal privileges and immunities of the laws and for acting in furtherance of said conspiracy to injure Plaintiff by depriving her of her property right to engage in the practice of medicine." (Doc. No. 1, ¶ 105). Corporate Defendants and Committee Member Defendants move the Court to dismiss Plaintiff's 42 U.S.C. § 1985(3) claims against them for failure to allege any facts that state they conspired to deprive Plaintiff of her property right to engage in the practice of medicine pursuant to FED. R. CIV. P. 12(b)(6). (Doc. No. 59). Plaintiff has not filed a response to the motion.

A violation of 42 U.S.C. § 1985(3) requires: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities of the laws; 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Lucero v. Operation Rescue of Birmingham, 954 F.2d 624, 627 (11th Cir. 1992)(*citing* United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)). The second element must allege that a class-based, invidiously discriminatory intent was behind the alleged actions of Corporate Defendants and Committee Member Defendants in order to assert a Section 1985(3) claim. Burrell v. Board of Trustees at Georgia Military College, 970 F.2d 785, 793-94 (11th Cir. 1992).

Plaintiff has not filed a response to the FED. R. CIV. P. 12(b)(6) motion by Corporate

10

Defendants and Committee Member Defendants and, with little concrete factual allegations in her

Complaint and Amended Complaint, Plaintiff has failed to meet the narrow intent requirement

enunciated in Burrell v. Board of Trustees at Georgia Military College that the alleged actions of

Corporate Defendants as well as Committee Defendants in their individual capacities were

motivated by some racial or otherwise "class-based, invidiously discriminatory animus." *Id.* at

794. Therefore, Defendants' Joint Motion to Dismiss for Failure to State a Claim upon Which

Relief Can Be Granted (Doc. No. 59) is **GRANTED as to Count X of Plaintiff's Complaint**

**against Plaintiff's Complaint against Corporate Defendants and Committee Member**

**Defendants in their individual capacities.**

## D.     Plaintiff's Motion for Leave to Exceed the Number of Interrogatories, Requests for Production of Documents and Requests for Admissions to the Party Defendants

The Court notes that pursuant to M.D.GA. LOCAL R. 33.1, the number of interrogatories

served to each party may not exceed twenty-five (25). The Court further notes that pursuant to

M.D.GA. LOCAL R. 34, the number of requests for production served to each party may not exceed

ten (10). And finally, the Court notes that pursuant to M.D.GA. LOCAL R. 36, the number of

requests for admissions served to each party may not exeed fifteen (15).

Plaintiff requests the following to be served to each individually named defendant: 60

interrogatories, 40 requests for production of documents, and a total of 120 requests for

admissions. (Doc. No. 83, pp. 2-3). Plaintiff requests the following to be served to each corporate

and/or business entity: 100 interrogatories, 75 requests for production of documents, and a total of

120 requests for admissions. *Id.*

Upon review of the record and the briefs as to the instant motion, the Court finds that the

issues in the captioned case reach a level of complexity and circumstances in which the prescribed

number of interrogatories, requests for production of documents and requests for admissions are

11

not adequate. However, the Court also finds that Plaintiff has not presented a sufficient basis for the number of interrogatories, requests for production of documents and requests for admissions that she believes are necessary requests. The Local Rules of this Court contemplate the filing of actions involving allegations of civil and constitutional rights violations, among other complex areas of litigation. Thus, the fact alone that the claims in the captioned case involve civil rights and constitutional claims is insufficient to greatly expand the standard number of discovery requests. "[D]efendants recognize the complexity of the matter before them," but aptly state that reasonable limitations on discovery pursuant to the Federal Rules of Civil Procedure and the Local Rules should be established "keeping in mind that the Federal Rules were established for an 'inexpensive determination of every action.'" (Doc. No. 84, p. 2).

As cited in Plaintiff's reply brief, the instant motion for leave to exceed the number of interrogatories, requests for production of documents and requests for admissions is similar to the recently litigated case of Marshall v. Americus-Sumter County Hospital Authority, No. 1:01-CV-79-3. (Doc. No. 87). *See generally* Marshall v. Americus-Sumter County Hospital Authority, 2002 U.S. Dist. LEXIS 26822, *21-*22 (M. D. Ga. November 22, 2002).    Specifically, Plaintiff declared that "the same discovery limitations ordered by the Court in the Marshall case be applied in her case." (Doc. No. 87, p. 2).   Therefore, based on the factual allegations alleged in Plaintiff's complaint, the complexity of the issues alleged, and Plaintiff's expressed amenability to the same number of discovery requests ordered in Marshall, the Court finds appropriate and hereby increases the number of discovery requests to be served to each individually named defendant: 35 interrogatories, 20 requests for production of documents, and a total of 25 requests for admissions. Further, the Court hereby increases the number of discovery requests to be served to each corporate and/or business entity: 45 interrogatories, 30 requests for production of documents, and a total of 35 requests for admissions. Careful structuring and direction of said discovery requests to the

12

relevant matters should allow Plaintiff reasonable and adequate discovery through the increases

granted herein by the Court and because the issues have been narrowed by Court's order granting

Defendants' motion to dismiss several of Plaintiff's claims. Therefore, Plaintiff's Motion for

Leave to Exceed the Number of Interrogatories, Requests for Production of Documents and

Requests for Admissions to the Party Defendants (Doc. No. 83) is **GRANTED-in-part and**

**DENIED-in-part.**

      E.     **Plaintiff's Motions to Compel Responses to Plaintiff's First Interrogatories; and Plaintiff's Motions to Compel Responses to Plaintiff's First Continuing Request for Production of Documents and Things**

Plaintiff moves to compel discovery responses from Defendants. These motions are:

Plaintiff's Motion to Compel Defendant Dudley to Answer Interrogatories (Doc. No. 91);

Plaintiff's Motion to Compel Defendant Dinella to Answer Interrogatories (Doc. No. 92);

Plaintiff's Motion to Compel Defendant Busman to Answer Interrogatories (Doc. No. 94);

Plaintiff's Motion to Compel Defendant Carlson to Answer Interrogatories (Doc. No. 95);

Plaintiff's Motion to Compel Defendant King to Answer Interrogatories (Doc. No. 96); Plaintiff's

Motion to Compel Defendant Tu to Answer Interrogatories (Doc. No. 97); Plaintiff's Motion to

Compel Defendant Sumter Regional Hospital, Inc. ("Defendant SRH") to Answer Interrogatories

(Doc. No. 98); Plaintiff's Motion to Compel Defendant Dudley to Produce Documents and Things

(Doc. No. 101); and Plaintiff's Motion to Compel Defendant SRH to Produce Documents and

Things (Doc. No. 102).

Defendant Dudley filed responses to Plaintiff's motions to compel answers to

interrogatories and production of documents. (Doc. Nos. 93, 108). Defendant Tu filed a response

to Plaintiff's motion to compel answers to interrogatories. (Doc. No. 103). Defendant King filed a

response to Plaintiff's motion to compel answers to interrogatories. (Doc. No. 104). Defendant

SRH filed a response to Plaintiff's motion to compel production of documents. (Doc. No. 107).

Defendants Dinella, Busman, Carlson, and SRH did not file a response to Plaintiff's motion to compel answers to interrogatories. (See Doc. Nos. 92, 94, 95, 98).[7]

### 1.    Defendants' Objections based on State Peer Review Privilege, State Medical Review Privilege and Federal Self-Critical Analysis Privilege

By its previous order entered September 15, 2004, the Court suspended discovery in the instant case pending issuance of the present order on the parties' numerous pending motions. (Doc. No. 110). The Court concluded that no rational and efficient discovery could reasonably take place in light of the nature and content of the pending motions and responses.

After review of the record, the Court believes that the disputes and interrupted discovery stem from mutual misapprehension of relevant available discovery by both sides. First, Plaintiff apparently seeks to immediately discovery matters falling within the purview of peer review without first exhausting available avenues of discovery not subject to asserted privileges, and if appropriate, thereafter seeking such information. There is clearly a public interest in limiting, if not totally prohibiting in most circumstances, access to actual peer review information. It has not been shown at this stage that such information in light of other reasonably accessible discovery is actually needed such that the aforesaid policy should be set aside.

On the other hand, Defendants seek unreasonably to give peer review and the so-called "federal self-critical analysis privilege" the broadest possible application. Defendants have utterly failed to show that either asserted privilege protects them by way of a total non-response to Plaintiff's discovery requests. Matters covered by peer review are much more narrowly defined and Defendants have not specifically identified any particular matter covered by a "federal self-

---

[7]    The Court notes that Plaintiff also served interrogatories to Defendant Garth, but it appears that Plaintiff did not file a motion to compel answers to interrogatories to that Defendant. (*See* Doc. No. 100).

14

critical analysis privilege." Merely to assert these in a conclusory and generalized manner without the particularity necessary for a reasonable review and analysis by the Court amounts to an unjustified failure to respond. The Court will endeavor to clarify and redirect discovery as explained and discussed below.

a.   *Legal Standards*

i.   State Peer Review Privilege and Medical Review Committee Privilege

O.C.G.A. §§ 31-7-133 and 31-7-143 were enacted to establish privilege from discovery or use as evidence in medical negligence civil litigation against a provider of professional health services arising out of the proceedings of peer review organizations and medical review committees and to provide immunity to participants and witnesses in such proceedings. Privileges provided by the peer and medical review statutes are to be narrowly construed. Emory Clinic v. Houston, 258 Ga. 434 (1988). And as contained in each statute's respective second sentence, there are limitations to the immunity conferred to peer review organizations and medical review committees and the Georgia General Assembly expressly set forth two exceptions to the privilege statutes, i.e., the "original sources" exception and the "matters within [one's] knowledge" exception. Patton v. St. Francis Hospital, 246 Ga. App. 4, 7 (2000). *See also* O.C.G.A. §§ 31-7-133 and 31-7-143.[8]   While both statutes appear to *absolutely preclude* Plaintiff from discovering

---

[8]   "However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such organization, nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within his knowledge; but such witness cannot be asked about his testimony before such organization or about opinions formed by him as a result of the organization hearings." O.C.G.A. § 31-7-133(a). The Georgia Code section applicable to medical review committees shares almost identical language as to authorizing disclosure from otherwise original sources, except in place of the word "organization" is the word "committee." *See* O.C.G.A. § 31-7-143.

information, documents or records produced and/or presented to a peer review organization or medical review committee in medical malpractice cases, O.C.G.A. § 31-7-143 expressly authorizes Plaintiff to obtain discovery from "original sources" documents which the peer review organization or medical review committee examined, and, in addition, to seek interrogatories from an individual Defendant who appeared before or was a member of the peer review organization or medical review committee "as to matters within his knowledge" such as to an applicable standard of care, so long as the individual Defendant is not asked about such proceedings. Patton v. St. Francis Hospital, 246 Ga. App. at 6 (emphasis in original).

Georgia state courts have also stated that there is no privilege under O.C.G.A. § 31-7-143 for personnel records and evaluations of alleged negligent employees which may be internally generated by the medical organization. DeLoitte, Haskins & Sells v. Green, 187 Ga.App. 376, 378 (1988). Under O.C.G.A. § 31-7-143, internally generated personnel records and evaluations of allegedly negligent employees are not, as a matter of law, privileged from discovery. *Id.* The freedom from discovery afforded to a medical review committee under O.C.G.A. § 31-7-143 is limited and is a "narrow exception" to a general policy in favor of discovery and admissibility of probative evidence. *See* Hollowell v. Jove, 247 Ga. 678 (1981). There must be a balancing however between the competing interest of an employer and its affected employees as to any rights of privacy in personnel matters, which under Rule 26 of the Federal Rules of Civil Procedure the employer would have the burden of demonstrating such a privilege, and the derogation of the privilege statutes to a fundamentally recognized broad discovery. *Id.*; DeLoitte, Haskins & Sells v. Green, 187 Ga.App. at 378.

Moreover, Georgia state courts have found the meaning of "peer review" refers to the evaluation of the quality of medical care and does not include the credentialing process, in that not every decision to extend or maintain staff privileges is subject to immunity under O.C.G.A. §§ 31-

16

7-133 and 31-7-143. *See* McCall v. Henry Medical Ctr., Inc., 250 Ga.App. 679, 682 (2001).  To

obtain operating licenses, hospitals must either submit to an inspection by the Georgia Department

of Human Resources ("DHR") or provide DHR with hospital accreditation records prepared by the

Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") or another national

accreditation body, panel, committee or organization and Plaintiff may seek disclosure of such

information. *See* Georgia Hosp. Assoc. v. Ledbetter, 260 Ga. 477 (1990)(discussing O.C.G.A. §

31-7-3).  Notwithstanding the possibility that such records are also peer review materials, hospital

accreditation reports are not exempt from disclosure because they are generated as part of DHR's

licensure and certification responsibilities rather than as peer review, but, as stated before, an

observance of the confidentiality of such peer review materials may be necessary in order to ensure

that any disclosure would not waive or abrogate any individual's personal privacy.  *Id.*

   The Court cannot assume without preliminary facts from Plaintiff and particularized

responses from Defendants whether or not: the disclosures are privileged, the documents are

personnel matters or the hospital records were generated for purposes of licensure and certification.

Without an initial evidentiary requirement before the Court compels interrogatories or production

of such documents, the absolute assertion of privilege by any hospital on the one hand would invite

abuse of the peer review process by simply labeling all possible sources of inculpatory evidence as

produced and/or presented to the peer review committee and the equally blanket assertion by

Plaintiff as to an entitlement to discovery of peer review materials would create an overly broad

roadblock to a general public interest in preserving a hospital's ability to provide adequate

treatment through the candor of its medical staff.

   In Doe v. Unum Life Insurance Co. of Am., 891 F.Supp 607 (N.D. Ga. 1995), the Northern

District gave guidance to discovery disputes relating to alleged activities of peer review

organizations and medical review committees. The district court stated that the parties should

examine whether the information is either: "(1) material that relates directly to the peer review investigation, which is always nondiscoverable, despite its source; and (2) information that would have existed regardless of the institution's investigation, but is sought *from the peer review body* itself." Doe v. Unum Life Insurance Co. of Am., 891 F.Supp at 611(emphasis in original).  If the information falls into the second category, the district court referred to this as "outside information," akin to the previously-stated "original sources" exception and the "matters within [one's] knowledge" exception, and it may be discoverable unless it is sought from an "inside" source. *Id.*  While such outside information is not protected by O.C.G.A. §§ 31-7-133 and 31-7-143, "the statutes do not authorize the court to compel the peer review committees to act as a convenient or efficient surrogate" to help Plaintiff satisfy the "original sources" exception. *Id.* And as to the "matters within [one's] knowledge" exception, the Northern District stated that a Plaintiff can seek interrogatories from an individual Defendant who appeared before or was a member of the peer review organization or medical review committee if Plaintiff does not attempt through interrogatories or other discovery device to determine who may have attended or given testimony at such proceeding where Plaintiff's suspension of privileges may have been discussed. *Id.* at 611 n. 4.  However, this does not preclude Plaintiff from: deposing witnesses as long as it is not on the subject of their testimony before the committee; seeking "original sources" documents that would have existed independent of an investigation by a peer review organization or medical review committee; and acquiring through interrogatory and deposition the names and addresses of people having personal knowledge of events that are the subject matter of the litigation. *Id.*

### iii.    Federal Self-Critical Analysis Privilege

The federal self-critical analysis privilege originated in Bredice v. Doctors Hosp., Inc., 50

18

F.R.D. 249 (D.D.C. 1970).  In that case,[9] hospital peer review materials, i.e., minutes of hospital

staff meetings and committee reports discussing treatment given and procedures to improve patient

care, were considered protected from disclosure under the federal self-critical analysis privilege

because, the district court reasoned, the same peer review materials were protected by most state-

created peer review statutes.  *See Id.* at 250-51.  However, the scope of the federal self-critical

analysis privilege generally applies only to reports voluntarily prepared as internal safety reviews

in order to allow companies to evaluate the causes of accidents in which they are involved in an

effort to prevent future problems.  *See* Reid v. Lockheed Martin Aeronautics Co., 199 F.R.D. 379,

381 (N.D. Ga. 2001).  The rationale is to encourage a company's desire to engage in internal self-

evaluations of their performance in the equal employment opportunity and protect an important

public interest in having hospitals critically evaluate the quality of the care they provide.  *Id.*[10]

However, there is disagreement amongst the district courts within the Eleventh Circuit as

to whether the federal self-critical analysis privilege should be recognized in employment

discrimination cases.  *See* Freiermuth v. PPG Industries, Inc., 218 F.R.D. 694 (N.D. Ala.  2003);

Johnson v..United Parcel Service, Inc., 206 F.R.D. 686 (M.D. Fla.  2002); Reid v. Lockheed Martin

Aeronautics Co., 199 F.R.D. 379 (N.D. Ga. 2001); Abdallah v. The Coca-Cola Co., 2000 WL

33249254 (N.D. Ga. 2000).  The Eleventh Circuit Court of Appeals itself has not recognized the

federal self-critical analysis privilege in any context.  Reid v. Lockheed Martin Aeronautics Co.,

199 F.R.D. at 384.  As stated in Abdallah v. The Coca-Cola Co., the federal self-critical analysis

privilege "is neither widely recognized nor firmly established and is of doubtful viability in light of

---

[9]      Bredice, unlike the instant case, however, was a medical malpractice case.

[10]      Assuming such a privilege exists and is applicable, analogizing it to peer review,
         it would appear the exceptions that apply to peer review should apply to federal
         self-critical analysis.

19

the decision in University of Pennsylvania v. EEOC, 493 U.S. 182 (1990)," a Title VII case where

the Supreme Court declined to find a "federal academic peer review privilege" analogous to the

federal self-critical analysis privilege. 2000 WL 33249254, at *8.

When a district court within the Eleventh Circuit does recognize a federal self-critical

analysis privilege, the privilege consistently does not apply to objective factual or statistical

information, but only protects "subjective analysis designed to have a positive societal effect."

Reid v. Lockheed Martin Aeronautics Co., 199 F.R.D. at 386. *See also* Freiermuth v. PPG

Industries, Inc., 218 F.R.D. 694, 698 (N.D. Ala. 2003)("recognizing a [federal] self-critical

analysis privilege is questionable when one considers the possibility that . . . highly relevant

evidence of an employer's intent would be excluded from discovery and impede the public's

important interest in enforcement of this nation's equal employment opportunity laws "). For

Defendants to suggest that the federal self-critical analysis has been embraced in the employment

discrimination context amongst district courts within the Eleventh Circuit to prevent the discovery

of otherwise relevant information is, at the least, inaccurate.

### b.   *Legal Analysis*

Of the disputed discovery requests, Plaintiff seeks to elicit information possibly relating to

confidential medical peer review proceedings to prove her claim that she was treated differently

from similarly situated doctors facing questions about their medical performance. These requests

include, but may not be limited to: Defendant Dudley Interrogatories 1 through 25; Defendant

Dinella Interrogatories 1, 10, 13, 14, 18, 20, 21, 22, 23; Defendant Busman Interrogatories 4, 5, 6,

7, 8, 9, 10, 11, 14, 15, 16, 18, 19, 20, 23, 25; Defendant Carlson Interrogatories 6, 7, 10, 11, 14, 15,

16, 20, 21, 22, 25; Defendant King Interrogatories 8, 9, 14, 15, 16, 19, 20, 23, 24, 25; Defendant Tu

Interrogatories 1, 2, 4, 6, 17, 20; and Defendant SRH Interrogatories 1, 2, 10, 14, 15, 17, 22. As

noted previously, the Eleventh Circuit has not squarely addressed the state peer review and state

medical review committee privilege in the context as the question is presently posed to this Court. However, the Court believes that the Eleventh Circuit would closely follow the reasoning as discussed above.

Since Plaintiff has broadly requested what likely includes privileged information, Plaintiff's Motions to Compel Defendants to Answer Interrogatories (Doc. Nos. 91, 92, 94, 95, 96, 97, 98) are **DENIED as it relates to Defendant Dudley Interrogatories 1 through 25; Defendant Dinella Interrogatories 1, 10, 13, 14, 18, 20, 21, 22, 23; Defendant Busman Interrogatories 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 16, 18, 19, 20, 23, 25; Defendant Carlson Interrogatories 6, 7, 10, 11, 14, 15, 16, 20, 21, 22, 25; Defendant King Interrogatories 8, 9, 14, 15, 16, 19, 20, 23, 24, 25; Defendant Tu Interrogatories 1, 2, 4, 6, 17, 20; and Defendant SRH Interrogatories 1, 2, 10, 14, 15, 17, 22.** Also, Plaintiff's Motions to Compel Defendants for Production of Documents and Things (Doc. Nos. 101, 102) are **DENIED as it relates to Defendant Dudley Document Requests 1, 5, 6, 7, 8, 9 and Defendant SRH Document Requests 2, 3, 4, 5.** Plaintiff is **ORDERED** to recast the aforementioned interrogatories and requests for production consistent with the Court's order, i.e., first categorize requests not covered by privilege by specifically directing said requests to matters that: fall under the "original sources" exception and/or the "matters within [one's] knowledge" exception, personnel records and evaluations of alleged negligent employees, or are accreditation reports or information or materials otherwise not covered by the peer review privilege. In summary, Plaintiff's interrogatories and requests for production should be stated in terms which do not contemplate production of privileged documents, etc. In making its responses, if applicable, Defendants shall assert the relevant privilege specifically and provide the materials and responses allegedly covered thereby to the Court for in camera inspection and review. Defendants shall not provide such material and information to the Court without first making a good faith review of the same consistent with this

21

order.

## 2.   *Defendant's Non-Peer Review Objections*

Defendants Busman, Dudley, SGHA, and Sumter Regional Hospital also object based on other reasons to other requests propounded by Plaintiff. Defendant Dinella Interrogatories 9, 11, 12, 15, 16, 19; Defendant Busman Interrogatory 5; Defendant Carlson Interrogatories 1, 2, 3, 4, 5, 13, 17, 18, 19, 23, 24; Defendant King Interrogatories 11, 12, 22; Defendant Tu Interrogatories 3, 5, 7, 8, 9, 13, 15, 16, 18, 19; and Defendant SRH Interrogatories 18, 19, 20. Because the reasons for objecting to each group of requests is unique to each request or set of requests, they will be addressed each in turn.

### a.   *Defendant Dinella Interrogatories 9, 11, 12, 15, 16, 19*

Defendant Dinella objects to further answering Interrogatories 9, 11, 12, 15, which Dinella generally answered as to information which would be contained in Plaintiff's own personnel records, and to further answering Interrogatory 11, which Defendant Dinella generally answered as to information which could be contained in both hospital accreditation records and personnel records relating to alleged negligent medical staff. The objections are overruled. Based on the allegation of disparate treatment, such requests by Plaintiff are more than reasonable and appropriate if such evidence leads to admissible evidence showing that Plaintiff was treated differently than similarly situated physicians. Plaintiff's Motion to Compel Defendant Dinella to Answer Interrogatories 9 , 11, 12, 15  (Doc. No. 92) is **GRANTED consistent with this order.**

Defendant Dinella objects to Interrogatory 16, which seeks information which would be contained in Plaintiff's own personnel records, but Defendant Dinella contends that the request was overly broad, vague and ambiguous. The objection is overruled.  Based on the allegation of disparate treatment, such requests by Plaintiff are more than reasonable and appropriate if such evidence leads to admissible evidence showing that Plaintiff was treated differently than similarly

22

situated physicians.  Plaintiff's Motion to Compel Defendant Dinella to Answer Interrogatory 16 (Doc. No. 92) is **GRANTED consistent with this order.**

Defendant Dinella objects to further answering Interrogatory 19, which Defendant Dinella generally answered as to information which could be contained in both hospital accreditation records and personnel records relating to alleged negligent medical staff.  Defendant Dinella answered the question in the affirmative without further explanation.  The objection is overruled. Based on the allegation of disparate treatment, such a request by Plaintiff is more than reasonable and appropriate if such evidence leads to admissible evidence showing that Plaintiff was treated differently than similarly situated physicians.  Plaintiff's Motion to Compel Defendant Dinella to Answer Interrogatory 19 (Doc. No. 92) is **GRANTED consistent with this order.**

b.      *Defendant Busman Interrogatory 5*

Defendant Busman objects to further answering Interrogatory 5, which asks Busman whether he knows Ms. Carmen Mansfield, Mr. Eric Deriso and/or Mr. Deriso's brother. The question itself is not overly broad in that it simply asks whether or not Defendant knows the aforementioned persons and since Defendant Busman answered the question in the affirmative, Defendant Busman should not be compelled to further respond.  Plaintiff's Motion to Compel Defendant Busman to Answer Interrogatory 5 (Doc. No. 94) is **DENIED.**

c.      *Defendant Carlson Interrogatories 1, 2, 3, 4, 5, 13, 17, 18, 19, 23, 24*

Defendant Carlson objects to further answering Interrogatories 1, 2, 5, 13, 18, 23, and 24 which Carlson generally answered to the effect that the information would be contained in Plaintiff's own personnel records, hospital accreditation records and personnel records relating to alleged negligent medical staff. The objections are overruled.  Based on the allegation of disparate treatment, such requests by Plaintiff are more than reasonable and appropriate if such evidence

23

leads to admissible evidence showing that Plaintiff was treated differently than similarly situated physicians. Plaintiff's Motion to Compel Defendant Carlson to Answer Interrogatories 1, 2, 5, 13, 18, 23, and 24 (Doc. No. 95) is **GRANTED consistent with this order.**

Defendant Carlson objects to further answering Interrogatories 3 and 19, which ask Carlson whether Defendant Carlson ever altered an entry in a patient's medical record. Specifically, Interrogatory 3 asks whether Defendant has altered a medical of a discharged or transferred patient and the circumstances. Defendant answered in the affirmative without identifying the specific medical records. Interrogatory 19 asks whether Defendant altered any entry in a patient's medical record more than a year after the said patient has been discharged or transferred. Defendant stated that he did not understand the question. Interrogatory 3 was partly answered. Since Plaintiff did not request identification of the medical review, Defendant need not respond further in that regard. However, Interrogatory 19 is neither vague nor ambiguous and therefore should be answered. Plaintiff's Motion to Compel Defendant Carlson to Answer Interrogatory 19 (Doc. No. 95) is **GRANTED consistent with this order.**

Defendant Carlson objects to answering Interrogatory 4 regarding the Defendant's quality of medical treatment rendered to a critically ill minor child, Deontrae Rivers, and what, if any, action was taken by the Hospital. In his answer, Defendant Carlson simply states that he has "no knowledge responsive to this interrogatory or its sub-parts outside the "attorney-client privilege." Defendant does not provide any detail upon which to assert the privilege. The Court does not see how the question as to what action the Hospital took to the knowledge of Defendant falls within the attorney-client privilege. The objection is overruled. Based on the allegation of disparate treatment, such a request by Plaintiff is more than reasonable and appropriate if such evidence leads to admissible evidence showing that Plaintiff was treated differently than similarly situated physicians. Plaintiff's Motion to Compel Defendant Carlson to Answer Interrogatory 4 (Doc. No.

24

95) is **GRANTED consistent with this order.**

Interrogatory 17 asks Defendant Carlson for a list of each and every committee and board on which he served with Defendant Kind. Defendant objects to further answering Interrogatory 17 because "he has no records of the boards he has served on and the time periods." The interrogatory as put does not request information limited to Defendant's possession of related records. Therefore, on that basis, the objection is overruled. Plaintiff's Motion to Compel Defendant Carlson to Answer Interrogatory 17 (Doc. No. 95) is **GRANTED consistent with this order.**

          *d.*     *Defendant King Interrogatories 11, 12, 22*

Defendant King objects to further answering Interrogatories 11, 12, and 22 regarding the alleged negligence of Dr. Michael Cacciatore. Specifically, Interrogatory 11 asks for the complaints and a description of the incident or incidents that gave rise to such complaint against Dr. Michael Cacciatore lodged with the Hospital. Interrogatory 12 asks for the number and description of the patients that Dr. Michael Cacciatore treated and were readmitted for additional medical treatment because of infection. Interrogatory 22 asks for documentation of harm or endangerment to patients by Dr. Michael Cacciatore reported to any national accreditation body, panel, committee or organization.

The interrogatories clearly request information within Defendant's personal knowledge. The objections are overruled. Based on the allegation of disparate treatment, such requests by Plaintiff are more than reasonable and appropriate if such evidence leads to admissible evidence showing that Plaintiff was treated differently than similarly situated physicians. Plaintiff's Motion to Compel Defendant King to Answer Interrogatories 11, 12, and 22 (Doc. No. 96) is **GRANTED consistent with this order.** Defendant may refuse to respond as to any matter within the purview of peer review as discussed in this order and in compliance therewith.

          *e.*     *Defendant Tu Interrogatories 3, 5, 7, 8, 9, 13, 15, 16, 18, 19*

25

Defendant Tu objects to further answering Interrogatories 3, 5, 7, 8, 9, 16, 18, and 19

which Defendant Tu generally answered to the effect that the information requested would be

contained in Defendant's own personnel records, Plaintiff's own personnel records, hospital

accreditation records and personnel records relating to alleged negligent medical staff. The

objections are overruled. Based on the allegation of disparate treatment, such requests by Plaintiff

are more than reasonable and appropriate if such evidence leads to admissible evidence showing

that Plaintiff was treated differently than similarly situated physicians. Plaintiff's Motion to

Compel Defendant Tu to Answer Interrogatories 3, 5, 7, 8, 9, 16, 18, and 19  (Doc. No. 97) is

**GRANTED consistent with this order.**

Defendant Tu objects to further answering Interrogatory 13 regarding the roles of all

medical staff in each and every alleged "Sentinel Event," including the role of Dr. Jerry Adams as

the Administrator of Sumter Regional Hospital in relation to any "Sentinel Event."  Plaintiff

objects to the answer because Defendant Tu did not indicate under oath whether he made a

reasonable inquiry into the relevant information which would show that "acts and/or omissions

worse than those alleged to have been committed by Plaintiff were committed by other similarly

situated physicians who were treated differently than Plaintiff."

The objections are overruled. The interrogatory seeks information within Defendant's

personal knowledge and records available to him rather than specifically within the peer review

privilege exclusion.  Based on the allegation of disparate treatment, such requests by Plaintiff are

more than reasonable and appropriate if such evidence leads to admissible evidence showing that

Plaintiff was treated differently than similarly situated physicians. Plaintiff's Motion to Compel

Defendant Tu to Answer Interrogatory 13 (Doc. No. 97) is **GRANTED consistent with this**

**order.**

Defendant Tu objects to further answering Interrogatory 15 regarding an alleged complaint

26

made by Mr. Allen Mountjoy against Plaintiff and to any other complaints made against Plaintiff. Defendant Tu simply responded that he was "aware that Mr. Mountjoy filed a complaint against Plaintiff." Plaintiff objects to the answer because Defendant Tu did not indicate under oath whether he made a reasonable inquiry into the relevant information which would show that "acts and/or omissions worse than those alleged to have been committed by Plaintiff were committed by other similarly situated physicians who were treated differently than Plaintiff." To the extent information sought is specifically covered by the peer review privilege as discussed in this order, the objections are overruled. Based on the allegation of disparate treatment, such requests by Plaintiff are more than reasonable and appropriate if such evidence leads to admissible evidence showing that Plaintiff was treated differently than similarly situated physicians. Plaintiff's Motion to Compel Defendant Tu to Answer Interrogatory 15 (Doc. No. 97) is **GRANTED consistent with this order.**

f.    <u>Defendant SRH Interrogatories 18, 19, 20</u>

Defendant SRH objects to further answering Interrogatories 18, 19, and 20, which ask Defendant SRH's standard quality of care, including questions concerning the use of only one word to describe a physical component of a patient, whether it is proper to alter a medical record after more than a year after there has been an initial entry without documenting the fact that a new entry has been made and whether or not it is proper to not write progress notes as to a patient undergoing medical treatment  These questions relate to the standard of quality of care in medical procedures as known and understood by Defendant and are sufficiently outside the context of peer review. Plaintiff's Motion to Compel Defendant SRH to Answer Interrogatories 18, 19, and 20 (Doc. No. 98) is **GRANTED consistent with this order.**

**F.    Defendants' Protective Order**

Defendants' Motion for Protective Order (Doc. No. 99) is **GRANTED-in-part and**

27

**DENIED-in-part.** The Court **GRANTS** Defendants motion to the extent that there is a fundamental public interest in keeping peer review activities and materials confidential without further order of the Court. However, the Court **DENIES** a protective order for Defendants Dudley Document Requests 1, 5, 6, 7, 8, 9 and SRH Document Requests 2, 3, 4, 5 based on the federal self-critical analysis privilege because it is overly broad as asserted. If necessary, the Court will address these matters further upon the parties' compliance with this order.

Plaintiff states in her motions to compel: "To the extent that the defendants are withholding documents to allegedly protect the privacy and other confidentiality interests and/or the identities of persons involved, discussed, evaluated, and/or revealed in peer review documents, the Plaintiff has submitted to the defendants a proposed confidentiality protective order substantially similar to the one entered by this Court in the Marshall case in order to protect these interests." (Doc. Nos. 91, 92, 94, 95, 96, 97, 98, 101 and 102). To the extent Defendants in response to discovery requests make a particularized response asserting peer review, Defendants are protected pending review and further order of the Court upon compliance with the instant order. The Court directs and encourages the parties to enter into a confidentiality agreement/protective order for confidentiality and privacy for matters confidential, but outside the specific purview of peer review.

## II.   CONCLUSION

Plaintiff's Motion to Amend and/or Modify Discovery and Scheduling Order (Doc. No. 55) should be, and hereby is, **DENIED as premature without prejudice.**

Defendants' Joint Motion to Dismiss Plaintiff's Claims for Libel, Slander and Malicious Use of Privilege (Doc. No. 56) should be, and hereby is, **GRANTED and Counts VI, VII and VIII are dismissed as time barred under the applicable one-year Georgia statute of limitations.**

28

Defendants' Joint Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted (Doc. No. 59) should be, and hereby is, **GRANTED as to Count III and Count X of Plaintiff's Complaint against Defendants Southwest Georgia Healthcare Resources, Inc., Americus Pediatrics, P.C., Joseph W. King, III, M.D., P.C., Gynecology Associates, P.C., Sumter E.N.T., P.C., Michael Cacciatore, M.D., P.C., Sumter Medical Services, P.C., Southern Pathology & Laboratory Services, P.C. as well as Defendants A. Gatewood Dudley, Gregory A. Garth, Kenneth E. Dinella, Michael S. Busman, Chanh M. Tu, Gwendolyn V. Morgan, Michael Cacciatore, Charles M. Davis, Charles R. Sheffield and Sandra Zornes as members of the Sumter Regional Hospital Medical Executive Committee in their individual capacities only.**

Defendants' Joint Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted (Doc. No. 59) should be, and hereby is, **GRANTED as to Count IX of Plaintiff's Complaint against Defendants Southwest Georgia Healthcare Resources, Inc., Americus Pediatrics, P.C., Joseph W. King, III, M.D., P.C., Gynecology Associates, P.C., Sumter E.N.T., P.C., Michael Cacciatore, M.D., P.C., Sumter Medical Services, P.C., Southern Pathology & Laboratory Services, P.C., in their individual and official capacities, as well as Defendants A. Gatewood Dudley, Gregory A. Garth, Kenneth E. Dinella, Michael S. Busman, Chanh M. Tu, Gwendolyn V. Morgan, Michael Cacciatore, Charles M. Davis, Charles R. Sheffield and Sandra Zornes as members of the Sumter Regional Hospital Medical Executive Committee in their individual capacities only.**

Plaintiff's Motion for Leave to Exceed the Number of Interrogatories, Requests for Production of Documents and Requests for Admissions to the Party Defendants (Doc. No. 83) should be, and hereby is, **GRANTED-in-part and DENIED-in-part as provided herein.**

Plaintiff's Motions to Compel Defendants to Answer Interrogatories (Doc. Nos. 91, 92, 94,

29

95, 96, 97, 98) are **DENIED as it relates to Defendant Dudley Interrogatories 1 through 25; Defendant Dinella Interrogatories 1, 10, 13, 14, 18, 20, 21, 22, 23; Defendant Busman Interrogatories 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 16, 18, 19, 20, 23, 25; Defendant Carlson Interrogatories 6, 7, 10, 11, 14, 15, 16, 20, 21, 22, 25; Defendant King Interrogatories 8, 9, 14, 15, 16, 19, 20, 23, 24, 25; Defendant Tu Interrogatories 1, 2, 4, 6, 17, 20; and Defendant SRH Interrogatories 1, 2, 10, 14, 15, 17, 22.** Also, Plaintiff's Motions to Compel Defendants for Production of Documents and Things (Doc. Nos. 101, 102) are **DENIED as it relates to Defendant Dudley Document Requests 1, 5, 6, 7, 8, 9 and Defendant SRH Document Requests 2, 3, 4, 5.** Plaintiffs are given **not later than twenty (20) days** from the date of this order to recast and serve its discovery requests consistent with this order . Defendants shall file their responses **not later than twenty (20) days** after service and/or assert the relevant privileges with specificity and in accordance with this order.

Plaintiff's Motion to Compel Defendant Dinella to Answer Interrogatories 9, 11, 12, 15, 16, and 19 (Doc. No. 92) should be, and hereby is, **GRANTED consistent with this order.** Plaintiff's Motion to Compel Defendant Busman to Answer Interrogatory 5 (Doc. No. 94) should be, and hereby is, **DENIED.** Plaintiff's Motion to Compel Defendant Carlson to Answer Interrogatories 1, 2, 4, 5, 13, 17, 18, 19, 23, and 24 (Doc. No. 95) should be, and hereby is, **GRANTED consistent with this order.** Plaintiff's Motion to Compel Defendant King to Answer Interrogatories 11, 12, and 22 (Doc. No. 96) should be, and hereby is, **GRANTED consistent with this order.** Plaintiff's Motion to Compel Defendant Tu to Answer Interrogatories 3, 5, 7, 8, 9, 13, 15, 16, 18, and 19 (Doc. No. 97) should be, and hereby is, **GRANTED consistent with this order.** Plaintiff's Motion to Compel Defendant SRH to Answer Interrogatories 18, 19, and 20 (Doc. No. 98) should be, and hereby is, **GRANTED consistent with this order.** Plaintiff's Motions to Compel Defendants for Production of Documents and Things (Doc. Nos. 101, 102)

*are*

should be, and hereby is, **GRANTED consistent with this order**.

Defendants are given **not later than twenty (20) days** from the date of this order to produce or respond to the compelled responses and productions consistent with this order. Further, Plaintiff is **ORDERED** to submit briefs and necessary evidence on an appropriate award of attorneys fees for bringing the motions to compel within **not later than twenty (20) days** of the date of this order. Defendants may file responses and objections **not later than twenty (20) days thereafter**. Thereafter, the Court will determine whether a hearing is necessary or required. The parties shall take into consideration that all relief was not granted and that questions remain as to the ultimate application of some asserted privileges.

Defendants' Motion for Protective Order (Doc. No. 99) should be, and hereby is, **GRANTED-in-part and DENIED-in-part.** Plaintiff and Defendants are **ORDERED** to confer and submit a joint proposed protective order as to the confidentiality of non-peer review materials which should be produced, but nonetheless be protected from unnecessary disclosure and distribution. The parties are **ORDERED** to submit the joint proposed protective order **not later than twenty (20) days** of the date of this order.

Consequently, the counts remaining in Plaintiff's complaint are the following: **Count III** to recover damages from Defendants in their official capacities only pursuant to 42 U.S.C. § 1985(2); **Count IV** for failure to substantially comply with SGHA's credentialing plan and bylaws when suspending Plaintiff's clinical privileges under O.C.G.A. § 51-1-6; **Count V** for tortious interference with contractual and business relations under O.C.G.A. § 51-9-1; **Count IX** to recover damages from Defendants A. Gatewood Dudley, Gregory A. Garth, Kenneth E. Dinella, Michael S. Busman, Chanh M. Tu, Gwendolyn V. Morgan, Michael Cacciatore, Charles M. Davis, Charles R. Sheffield and Sandra Zornes as members of the Sumter Regional Hospital Medical Executive Committee, in their official capacities only pursuant to 42 U.S.C. § 1983; **Count X** to recover

31

damages from Defendants in their official capacities only pursuant to 42 U.S.C. § 1985(3); and

**Count XI** to recover damages pursuant to 42 U.S.C. § 1988.

The parties are **ORDERED** to confer and provide the Court with a proposed amended discovery and scheduling order **not later than thirty (30) days** from the date of this order and shall suggest to the Court whether a conference regarding the same is necessary or desired.

SO ORDERED, this _36st_ day of March, 2005.

**Hon. W. Louis Sands, Chief Judge**
**United States District Court**

32